The COUNTY OF COOK, et
al., Plaintiffs,

v.

MIDCON CORP., et al., Defendants.

CITY OF CHICAGO, et al., Plaintiffs,

v.

MIDCON CORP., et al., Defendant.

Nos. 82 C 2803, 82 C 3284.

United States District Court,
N.D. Illinois, E.D.

Nov. 7, 1983.

Patrick N. Giordano, Asst. State's Atty., Richard M. Daley, State's Atty., Stanley Garber, Corp. Counsel, Shea, Rogal & Assoc., Chicago, Ill., for plaintiffs.

Thomas Campbell, Michael E. Barry, Gardner, Carton & Douglas, Raymond F. Simon, Joseph A. Spitalli, Simon & Spitalli, Michael M. Conway, Peter B. Freeman, Albert C. Maule, William J. McKenna, Jr., Hopkins & Sutter, Charles W. Boand, Dennis J. O'Hara, Wilson & McIlvaine, Robert F. Forrer, Chicago, Ill., for defendants.

## Memorandum

LEIGHTON, District Judge.

These consolidated actions arise out of events surrounding the recent corporate reorganization involving Peoples Energy Corporation, MidCon Corporation, and their various corporate subsidiaries. Plaintiffs, the City of Chicago and the County of Cook, allege that the defendant corporations, various of their officers and directors, and their accountant, effected the reorganization in a manner which violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, the statute popularly known by the acronym "RICO." The causes are before the court on two motions to dismiss by defendants: one on the ground of *res judicata* or collateral estoppel, the other for failure of the complaint to state a claim on which relief may be granted. For the following reasons, the court grants the former motion, relying primarily on collateral estoppel; and in the alternative, it grants the latter motion, the court concluding that on the facts alleged, plaintiffs cannot plead adequately a violation of RICO.

## I

Before filing complaints in this court, the County of Cook and the City of Chicago were parties to two consolidated cases before Judge George J. Schaller of the Circuit Court of Cook County, Chancery Division. The proceedings in the state court commenced August 20, 1981 when several of the defendants in this action, Peoples Energy Corporation, MidCon Corporation, and Natural Gas Pipeline Company of America, filed a complaint against the Illinois Commerce Commission which sought, *inter alia*, an injunction against interference with a planned corporate reorganization. Peoples Energy proposed to transfer the common stock of its nonutility subsidiaries to a newly incorporated holding company, MidCon Corporation, in exchange for Mid-Con stock which was to be distributed to shareholders of Peoples Energy on a *pro rata* basis. Under the plan, Peoples Energy would continue to hold the common stock of its two public utility subsidiaries, The Peoples Gas Light and Coke Company and North Shore Gas Company. On September 3, 1981 the Illinois Commerce Commission filed a separate action against Peoples Energy, MidCon and Natural, as well as Peoples Gas Light and North Shore, seeking to enjoin the proposed reorganization; this suit eventually was consolidated with the already pending action in which the Commerce Commission was a defendant.

Cook County intervened in the state litigation on September 16, 1981 as a defendant to the affiliated corporations' suit for injunctive relief against interference with the reorganization by the Illinois Commerce Commission, and as a counterplaintiff seeking to enjoin the proposed Peoples reorganization. By this time, various other parties also had intervened in the proceedings as defendants and counterplaintiffs; among them were the State of Illinois, the Governor's Office of Consumer Services, an agency of the Illinois executive branch, Business and Professional People for the Public Interest, Inc., a not-for-profit corporation, and the South Austin Coalition Community Council, a not-for-profit community

organization. In September and October 1981, Judge Schaller conducted a five-week hearing on the parties' cross motions for preliminary injunctive relief. On October 23, 1981, he issued a 54-page decision, granting a preliminary injunction to Peoples and its affiliates, and denying such relief to the Illinois Commerce Commission, Cook County, and the other intervenors. After obtaining the approval of shareholders, Peoples and its affiliates implemented the reorganization on November 30, 1981. According to plan, control of the nonutility subsidiaries was transferred to MidCon from Peoples Energy, the remaining corporate parent of the two public utility subsidiaries.

Cook County filed an amended counterclaim before Judge Schaller on February 4, 1982, seeking a declaratory judgment that the Peoples reorganization was void, and praying for a permanent injunction requiring the corporations involved in the reorganization to undo what they were attempting to accomplish. Thereafter, on April 27, 1982, Judge Schaller granted the City of Chicago leave to intervene as an additional defendant-counterplaintiff. The City's intervention was subject to various terms and conditions: Chicago was to be bound by all orders previously entered by the state court; it was not to raise new issues or add new parties; finally, it was not to interfere with the control of the litigation in a manner which promoted injustice or caused undue delay. In its counterclaim, the City, too, sought an order granting declaratory and injunctive relief reversing the Peoples reorganization transaction.

In their counterclaims, the City and the County alleged that the Peoples reorganization was an ill-conceived attempt to circumvent the jurisdiction of the Illinois Commerce Commission while the corporations involved deprived consumers of the benefits of assets properly belonging to the rate base of the public utilities, Peoples Gas and North Shore, by transferring those assets to MidCon. Cook County specifically alleged that excessive dividend payments extracted from the utility subsid-

iaries, combined with Peoples Energy's investment policy of investing these funds in its nonutility holdings, constituted an arrangement which facilitated the exchange of utility assets to MidCon when the reorganization took place. As a consequence of the reorganization, consumers were injured, both parties contended, by having to pay increased gas prices while receiving less reliable service. These core allegations were repeated in virtually every pleading filed by the other intervening parties.

After obtaining the preliminary injunction, the Peoples affiliates filed a motion on October 28, 1981 for permanent injunctive relief. Judge Schaller then set July 6, 1982 as the trial date for hearing on the merits all the various claims and counterclaims of the parties.

On May 6, 1982, before the trial before Judge Schaller, Cook County filed a complaint in this court, alleging as a basis of federal jurisdiction that defendants, the corporations involved in the reorganization, various of their officers, directors, and their accountant, violated RICO by effecting the reorganization through a concerted pattern of racketeering. The City of Chicago filed a virtually identical complaint on May 26, 1982. These two actions were consolidated by this court's order of June 11, 1982. The gravamen of the RICO allegations before this court is that the reorganization was the culmination of a scheme to defraud consumers of their right to receive adequate and efficient utility service at just and reasonable rates by transferring to MidCon assets that properly belonged to the utilities. The major steps in this scheme to defraud, which took place between 1977 to 1981, are alleged by plaintiffs to be that:

(1) Defendants caused the utility subsidiaries to pay excessive dividends to Peoples Energy.

(2) They then caused Peoples Energy to invest these dividends in subsidiaries which were nonutilities.

(3) Meanwhile, defendants made misrepresentations to the Illinois Commerce Commission and to the public, stating that these dividends were not excessive and that their investment program would benefit the utility subsidiaries and their consumers.

(4) Defendants made plans to reorganize by transferring the nonutilities to a newly incorporated MidCon Corporation without disclosing those plans to the public until January 1981.

(5) Misrepresentations were made that the reorganization would not result in higher gas rates for the customers of Peoples Gas Light and North Shore and would have no adverse effect on the financial condition of either company.

(6) Finally, in late 1981, the scheme to defraud was consummated when the reorganization took place, leaving the nonutilities with a new corporate parent, MidCon, while North Shore and Peoples Gas Light remained subsidiaries of Peoples Energy. As a result of all the foregoing, plaintiffs allege, the utilities had become undercapitalized and the public, having been deprived of the benefits of assets generated by the utilities, has had to pay higher prices for less efficient utility services.

Plaintiffs further aver that defendants committed multiple acts of mail fraud, as prohibited by 18 U.S.C. § 1341, by using the United States mails in furtherance of their scheme to defraud. Included among these mailings were proxy statements, Form 10–K filings to the Securities and Exchange Commission, annual reports, press releases, transfers of assets, and various correspondence, including communications between officers and directors. Except for proxy statements issued by defendants when shareholder approval of the reorganization was sought, no mention of these mailings is made elsewhere in the complaint. The City and County allege that the proxy statements seeking shareholder approval of the reorganization were unconditionally certified by defendant Arthur Andersen & Co., the accountant of the corporate defendants, even though the statements determined dividends declared

on common stock for MidCon on a different basis than dividends declared on common stock for Peoples. These inconsistent accounting methods, plaintiffs maintain, "concealed the intentionally indirect transfer of assets from Peoples Gas Light and North Shore to MidCon."

In addition to claiming that defendants' alleged misconduct violated RICO, the City of Chicago appended to its complaint Counts II through IV, seeking to impose an accounting and constructive trust on the corporations and their officers for breach of their fiduciary duties under state law.

On July 2, 1982, only four days before all claims were to be heard on their merits, Cook County and Chicago filed motions to dismiss their counterclaims in the state proceedings voluntarily. These motions were granted by Judge Schaller. This development, however, did not terminate the participation of Chicago and Cook County in the state litigation. Despite the withdrawal of their counterclaims, they elected to remain in the state suit as intervening defendants by virtue of their answers, still on file, to the complaint for injunctive relief of Peoples Energy and its affiliates.

Cook County and Chicago also made pretrial motions *in limine* on July 2, 1983. These motions sought to limit evidence accepted and findings made in the state proceedings to the issue of the jurisdiction of the Illinois Commerce Commission over the Peoples Energy reorganization. If the motions *in limine* were granted, evidence concerning the effect of the reorganization on the public interest, the utilities and their consumers would have been excluded from the hearing; this issue, Chicago and Cook County contended, was raised solely in the counterclaims of the other intervenors, and was irrelevant to a determination whether a permanent injunction should issue in favor of Peoples Energy and its affiliates against the Illinois Commerce Commission's attempted exercise of jurisdiction. Judge Schaller, however, denied the motions *in limine*, remarking from the bench that he realized that plaintiffs were concerned about the possible collateral estop-

pel effects of his judgment, but that they had remained in the suit at their own election.

In July and August 1982, Judge Schaller conducted a trial in the Circuit Court of Cook County, hearing the merits of the claims for declaratory and injunctive relief of Peoples Energy and its affiliates, as well as the counterclaims of the Illinois Commerce Commission and the intervening defendant-counterplaintiffs for declaratory judgments, a permanent injunction, the imposition of fines and other relief setting aside the Peoples reorganization. At this trial, Cook County and Chicago were afforded a full opportunity to examine and cross-examine witnesses and to introduce documentary evidence. Cook County, in fact, called its own expert witness, Pat A. Laconto, to testify on the effect of the reorganization on the cost of capital to the utilities. During the trial, which lasted 19 days, nearly 300 exhibits and the testimony of 17 witnesses were introduced into evidence. Judge Schaller heard considerable evidence concerning Peoples' dividend, investment and acquisition practices, and the alleged transfer of utility assets to MidCon through the reorganization; moreover, evidence was introduced about the effect, if any, of the foregoing on the public interest, the utilities and their consumers.

On November 19, 1982, Judge Schaller issued an exhaustive 97-page opinion, setting forth the court's findings of facts and conclusions of law, in support of an order granting the corporate defendants in this action all the relief that they requested from the state court and denying the relief sought by the ICC and the various intervenors. The court found that the Peoples Energy reorganization was beyond the jurisdiction of the Illinois Commerce Commission because it did not involve the regulated utility subsidiaries, Peoples Gas Light and North Shore. The reorganization was effected by transferring from Peoples Energy to MidCon, both of whom are not utilities, the stock of nonutility subsidiaries. Moreover, Judge Schaller concluded, no assets of the regulated subsidiaries had

been transferred in connection with the reorganization; nor was their capitalization, capital stock, or retained earnings altered as a consequence of the reorganization. Accordingly, he entered a declaratory judgment that the Illinois Commerce Commission lacked jurisdiction over the Peoples reorganization.

The state court further granted Peoples Energy and its affiliates permanent injunctive relief against interference with the reorganization by the Illinois Commerce Commission, determining that declaratory relief was an inadequate legal remedy and that issuance of the injunction would prevent irreparable harm to the companies and would not disserve the public interest. In conjunction with his determination that the public interest would not be disserved by issuance of the injunction, Judge Schaller made the following specific findings of fact:

(1) The reorganization has not impaired the gas supply of the two regulated utility subsidiaries, Peoples Gas Light and North Shore, or their ability to service their respective customers.

(2) Further, the reorganization has not impaired the financial viability of the utility subsidiaries or their ability to raise capital.

(3) The payment by the utility subsidiaries to Peoples Energy of approximately 85% of their net income as dividends was neither excessive, illegal, or improper.

(4) Neither the decision of Peoples Energy not to reinvest these dividend payments in its utility subsidiaries nor the investment of these monies in nonutility subsidiaries which were eventually transferred to MidCon was illegal or improper.

(5) Moreover, the Illinois Commerce Commission may not lawfully consider the earnings and assets of nonutility businesses in setting rates for utility businesses. Therefore, before the reorganization, the Commission could not look to the financial viability of Peoples Energy or any of its nonutility subsidiaries in setting rates for Peoples Gas Light and North Shore.

(6) Further, the utility subsidiaries and their consumers did not have any right to claim benefits in Peoples Energy's investment program in its nonutilities.

(7) Neither the dividend payout policy, nor Peoples Energy's reinvestment program in its subsidiaries, nor its nonutility acquisition program caused any damage to consumers by adversely affecting either rates or quality of service.

(8) Consequently, no harm was imposed on the utilities or their consumers as a result of the transfer of the nonutility subsidiaries from Peoples Energy to MidCon.

The same findings that supported the grant of injunctive relief in favor of Peoples Energy and its affiliates also provided grounds for denying the relief sought by the Commission and the intervenors who had counterclaimed. Specifically, Judge Schaller noted that injunctive relief was being denied the intervening defendant-counterplaintiffs because, given the court's findings, they had not established injury. At one point in his decision the judge observed that, despite the withdrawal of their counterclaims, Cook County and Chicago had "remained in the case as party defendant[s] with all [the] rights of part[ies] and participated fully in the trial on the merits."

## II

■■■ Defendants argue that plaintiffs are barred from bringing this action by the related doctrines of *res judicata* and collateral estoppel. Judge Schaller's decision, they contend, effectively precludes further litigating the legality of the reorganization in this court. The rule of *res judicata* provides that a final judgment on the merits of a cause of action precludes the parties or their privies from raising in a subsequent litigation all claims which were raised or which might have been raised in

the original proceeding. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Gasbarra v. Park-Ohio Industries, Inc.,* 655 F.2d 119, 121 (7th Cir.1981); 18 Wright, Miller & Cooper *Federal Practice and Procedure: Jurisdiction* § 4402. If judgment has been rendered in favor of a party, all of his claims are extinguished and merged in the judgment, and he cannot bring another action for independent relief. *Id.* If, however, a party does not prevail, all of his claims are barred by the judgment in the other party's favor, even as to evidence, theories, arguments and remedies that were not advanced in the first litigation. *Id.*[1] In order for *res judicata* to operate, the subsequent litigation must involve the same litigants or their privies and be based on the same cause of action. *Whitley v. Seibel,* 676 F.2d 245, 248 n. 1 (7th Cir.1982), *cert. denied* — U.S. —, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982).

■ Collateral estoppel, on the other hand, does not require an identity of causes of action; moreover, even litigants who were not parties or privies of parties in a prior proceeding can invoke the doctrine. *Whitley v. Seibel, supra; see also infra* note 8. But collateral estoppel is conclusive only with respect to issues which were earlier actually and necessarily decided by a tribunal. *Montana v. U.S.,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Allen v. McCurry,* 449 U.S. at 94, 101 S.Ct. at 414. Accordingly, some authorities distinguish *res judicata* and col-

lateral estoppel by referring to the former as claim preclusion and the latter as issue preclusion. *See Allen,* 449 U.S. at 94 n. 5, 101 S.Ct. at 414 n. 5.

Courts recognize that *res judicata* and collateral estoppel "relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen,* 449 U.S. at 94, 101 S.Ct. at 414; *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262, *reh. denied,* — U.S. —, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982). Principles of comity and federalism also are promoted when the adjudication of a matter is recognized as conclusive and final by courts of other jurisdictions. *Id.* In recognition of this important consideration, Congress has not left it to the discretion of federal courts to decide whether decisions by state courts are to be given preclusive effect. A federal statute, 28 U.S.C. § 1738, mandates that federal courts extend the same full faith and credit to the judgments of state courts that those judgments would be given in the courts of the state from which the judgments emerged.[2]

This court first shall address defendants' arguments that *res judicata* bars plaintiffs' claims in these cases. Afterwards, the applicability of collateral estoppel to these proceedings will be assessed.

### A. *Res Judicata*

■ If defendants are to prevail on their assertion that the judgment rendered in the

---

**1.** The Court of Appeals for the Seventh Circuit has recognized that a defendant's failure to raise a claim as a counterclaim in an initial action does not normally preclude his basing a subsequent action against the opposed party on that claim. *Lee v. City of Peoria,* 685 F.2d 196, 201 (7th Cir.1983). An exception to this rule is recognized, however, when successful prosecution of a second action would nullify the initial judgment or would impair rights established in the initial action. *Id.* Following their interventions, the City and County were nominally defendants in the proceedings before the Circuit Court of Cook County. However, if they were granted the relief that is requested of this court, rights established in favor of the corporate defendants by the judgment of the state court would clearly be impaired. Moreover, since the

City and County chose to intervene in the state proceedings, this is not the usual instance where defendants, having been sued, were involuntarily forced to litigate in the prior forum so that equities counsel that they be given the opportunity to raise their own claims in a forum of their choice. The traditional considerations associated with *res judicata,* therefore, are fully applicable to the City and County.

**2.** Section 1738 provides that "[t]he ... judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ...."

Circuit Court of Cook County is a *res judicata* bar to this litigation, a threshold showing that they must make is that these suits involve the same cause of action that was before the Circuit Court of Cook County in the People's reorganization litigation.[3] *See Himel v. Continental Ill. Nat. Bank & Trust,* 596 F.2d 205, 209 (7th Cir.1979); *Gasbarra v. Park-Ohio Industries, Inc.,* 655 F.2d 119, 121 (7th Cir.1981); *Baird & Warner, Inc. v. Addison Industrial Park, Inc.,* 70 Ill.App.3d 59, 26 Ill.Dec. 1, 8, 387 N.E.2d 831, 838 (1979). In this circuit and in Illinois, courts have adopted a broad, transactional definition of the scope of a cause of action for purposes of *res judicata* determinations. As the Court of Appeals for the Seventh Circuit recently observed:

> [A] cause of action consists of a single core of operative facts which give the plaintiff a right to seek redress for the wrong concerned. Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action. If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted, and *res judicata* bars the latter section.

*Lee v. City of Peoria,* 685 F.2d 196, 200 (7th Cir.1982), *quoting Morris v. Union Oil Co. of California,* 96 Ill.App.3d 148, 51 Ill.Dec. 770, 777, 421 N.E.2d 278, 285 (1981); *see also Himel v. Continental Illinois National Bank,* 596 F.2d 205, 209 (7th Cir.1979) (query is whether "claims arise out of the same basic factual situation"). The court agrees with defendants that these suits and that before the Circuit Court of Cook County share a common

focus and arise from the same set of operative facts—events surrounding the Peoples Energy reorganization. They all concern whether the reorganization of the Peoples system took place in such a way that the utilities, Peoples Gas Light and North Shore, were improperly deprived of assets they owned and revenues they had generated, thereby causing the general public to receive less reliable service at higher prices. The proof of these facts necessarily would entail consideration by this court of essentially the same evidence that was presented in the state proceedings.

 Courts recognize, however, that the approach focusing on whether claims arose from the same set of operative facts is not without its limitations. *Res judicata,* after all, can only bar the litigation of claims that were raised or could have been raised. It is elementary that litigants cannot raise a claim in a court that would lack jurisdiction over it. Accordingly, plaintiffs argue that there can be no *res judicata* here because they could not raise their federal RICO claim in the Circuit Court of Cook County. In most instances, the mere fact that a claim derives from federal rather than state law does not prevent the application of *res judicata,* since state courts share concurrent jurisdiction with federal courts over most federal statutes. In those instances, however, where federal courts have exclusive jurisdiction over a statute, it is recognized that a state court judgment cannot be *res judicata.* A comment to the Restatement (Second) of Judgments summarizes the state of the law in this area:

> A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court,

---

**3.** The two other essential showings defendants must make are (1) that a final judgment on the merits was rendered in the state court and (2) that there is an identity of parties and their privies in the two suits. *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). It is clear in these cases that the judgment of the Circuit Court of Cook County is final for purposes of *res judicata* and collateral estoppel, even though

it is now on appeal before the Illinois Appellate Court. *See Wiseman v. Law Research, Inc.,* 133 Ill.App.2d 790, 792, 270 N.E.2d 77 (1971). Moreover, *res judicata,* if applicable, inures to the benefit of all defendants, even, in these particular cases, those who were not named parties in the reorganization litigation. *See infra* note 6.

either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

Restatement (Second) Judgments, comment e to § 25. The restatement approach is in full accord with decisions of the Court of Appeals for the Seventh Circuit, and courts of this district, which also have recognized that a judgment of a state court cannot impose a *res judicata* bar to a subsequent federal suit based on a claim within the federal courts' exclusive jurisdiction. *See Kurek v. Pleasure Driveway & Park Dist. of Peoria,* 583 F.2d 378, 379 (7th Cir.), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1978) (federal antitrust claim); *Marrese v. American Academy of Orth. Surgeons,* 496 F.Supp. 236, 238–239 (N.D. Ill.1980) (federal antitrust claim); *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1279–80 (N.D.Ill.1976) (damages claim under § 27 of the Securities Exchange Act of 1934); *but see Nash Cty. Bd. of Ed. v. Biltmore Co.,* 640 F.2d 484 (4th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981).[4] Therefore, the question reduces to whether the Circuit Court of Cook County would have lacked jurisdiction over plaintiffs' claims under RICO because they are within the exclusive province of the federal courts; if so, those claims cannot be barred by *res judicata.* The Supreme Court has articulated the following as a standard for determining whether a claim created by federal law can be brought in state court:

> In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. [Citations omitted] Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history or by a clear incompatibility between state-court jurisdiction and federal interests.

*Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981). Consequently, the wording and legislative history of the statute conferring jurisdiction are the starting points of the court's analysis to determine whether claims under civil RICO are the exclusive province of federal courts. In the scheme of RICO, the provision which creates the civil remedy for private litigants also confers jurisdiction on federal courts:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the

---

4. *Nash County Board* is the only reported case discovered by the court that departs from the general rule enunciated in the main body of the opinion. In that decision, the Court of Appeals for the Fourth Circuit held that a prior settlement of a suit brought in state court was *res judicata* with respect to a federal antitrust action when the state suit had been brought under state statutes that were so identical to federal antitrust laws that they even provided for the recovery of treble damages. *See* 640 F.2d at 490. The rationale of the court's decision seems to be that when plaintiffs have the choice of forum, and state and federal law is identical, *res judicata* can be used to preclude an exclusively federal action because plaintiffs could have raised the federal counterpart of the state statute by filing the action originally in federal rather than in state court. *Id.* at 490–492. However, even if adopted by this Circuit, the reasoning of *Nash County Board* would not apply to the present cases, since the state laws serving as a basis for the reorganization litigation in the Circuit Court of Cook County are not identical to the RICO statute and make no provision for the recovery of treble damages.

suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Defendants argue that since an injured person "may" sue in federal court that person also may sue in state court; therefore, they reason, federal jurisdiction is not exclusive. In support of their position, defendants refer to the court to *Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), in which the Supreme Court found that the presumption of state-court concurrent jurisdiction was not rebutted by the use of the term "may" in Section 301(a) of the Labor Management Relations Act of 1947, especially since state courts have traditionally exercised jurisdiction over contracts. *See* 368 U.S. at 508, 82 S.Ct. at 523. But, although 18 U.S.C. § 1964(c) shares with Section 301(a) the use of the term "may," the RICO jurisdictional provision conforms much more closely to the language of Section 4 of the Clayton Act, 15 U.S.C. § 15, the statute conferring jurisdiction over federal antitrust laws.[5] Except for the language pertaining to the venue of an antitrust action, 18 U.S.C. § 1964(c) practically repeats verbatim 15 U.S.C. § 15; even the venue language, however, is borrowed in the next RICO provision, 18 U.S.C. § 1965. Long has it been recognized that 15 U.S.C. § 15 gives federal courts exclusive jurisdiction over federal antitrust claims. *See, e.g., Blumenstock Bros. Adv. Agency v. Curtis Pub. Co.*, 252 U.S. 436, 440, 40 S.Ct. 385, 386, 64 L.Ed. 649 (1920); *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 451 n. 6, 63 S.Ct. 1146, 1148 n. 6, 87 L.Ed. 1509, *reh. denied*, 320 U.S. 809, 64 S.Ct. 27, 88 L.Ed. 489 (1943); *Engelhardt v. Bell & Howell Co.*, 327 F.2d 30, 35 (8th Cir.1964); *Kurek v. Pleasure Driveway & Park Dist. of Peoria*, 583 F.2d 378 (7th Cir.), *cert. denied*,

439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1978). Moreover, it is well established that the identity in language between 18 U.S.C. § 1964(c) and 15 U.S.C. § 15 is not a mere happenstance; Congress consciously patterned the RICO section after the antitrust prototype. *See, e.g.*, 115 Cong.Rec. 6992, 6993 (1969) (statement of Sen. Hruska). Legislators must have known that courts have construed virtually identical language as giving federal courts exclusive jurisdiction over antitrust claims. It would be anomalous for this court to hold that the jurisdictional grant in the RICO statute did anything other than create exclusive federal jurisdiction over civil claims by persons injured by violations of 18 U.S.C. § 1962. *But see Luebke v. Marine National Bank of Neenah*, 567 F.Supp. 1460 (E.D.Wis. 1983) (holding RICO claim could have been raised in state court because of presumption of concurrent jurisdiction, but not addressing whether statute's language and legislative history rebuts the presumption.)

■ The court concludes, therefore, that *res judicata* cannot bar the civil RICO claims since the Circuit Court of Cook County could not exercise jurisdiction over them. The court notes, on the other hand, that Counts II through IV of the complaint filed by the City of Chicago are based entirely on state law; consequently, the claims contained in these counts could have been raised in the state court. Indeed, the court finds that these claims, in many respects, duplicate the counterclaims that were voluntarily withdrawn by Chicago in the state proceedings. The court, therefore, concludes that principles of *res judicata* bar it from considering the claims advanced in Counts II through IV of the City's complaint. Accordingly, these counts will be dismissed.[6]

---

**5.** 15 U.S.C. § 15 states: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

**6.** The noncorporate defendants technically were not parties to the state reorganization proceedings; however, they are entitled to the benefits of *res judicata* on the issues of state law raised by the City because they are privies to the corporate parties involved in the litigation. For example, the corporations and their officers and directors are in privity for purposes of *res judicata. See Mandarino v. Pollard*, 718 F.2d 845 at 850 (7th Cir.1983); *Lee v. City of Peoria*, 685

## B. *Collateral Estoppel*

■ On the other hand, the federal courts' exclusive jurisdiction over plaintiffs' RICO claims does not foreclose the application of collateral estoppel principles to these cases. *See Becher v. Contoure Laboratories, Inc.,* 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929) (Holmes, J.); *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.,* 600 F.2d 1228, 1236 n. 18 (7th Cir.1979). Just because claims are within the exclusive jurisdiction of the federal courts does not mean that issues of fact underlying those claims are so sacrosanct that they cannot be collaterally estopped by findings of state courts. *Becher v. Contoure Laboratories, Inc.,* 279 U.S. at 390–392, 49 S.Ct. at 357; *Brown v. Felsen,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10. This is especially the case where, as here, the findings made by the state court are within an area of state expertise, Illinois utility law, which does not duplicate or parallel the statute whose enforcement is within exclusive federal jurisdiction. *See Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.,* 600 F.2d at 1236 n. 18; Note, *The Collateral Estoppel Effect of State Court Findings in Cases Within Exclusive Federal Jurisdiction,* 91 Harv.L.Rev. 1281, 1296 (1978).

Plaintiffs must do more than point to the federal courts' exclusive jurisdiction over RICO claims if they are to prevail on their contention that collateral estoppel cannot apply to these suits. Indeed, they must show no less than that the RICO statute in effect repeals the full faith and credit mandate of 28 U.S.C. § 1738.[7] *Kremer v.*

*Chemical Const. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262, *reh. denied,* —— U.S. ——, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982); *Allen v. McCurry,* 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980). There is no language in the RICO statute expressly repealing Section 1738. Nor is there a basis in the legislative history of the statute for implying an intent on the part of Congress to limit the issue preclusive effect of state court determinations. Having participated in the reorganization litigation, plaintiffs have no right to come into this federal court unfettered by the state court's findings. What remains is for the court to determine the proper application of collateral estoppel to these cases.

■ In general, collateral estoppel precludes litigation of issues in subsequent proceedings when (1) the parties against whom the estoppel is asserted were parties to the prior adjudication[8], (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issues was necessary to the court's judgment, and (4) those issues are identical to issues raised in the subsequent suit. *See Whitley v. Seibel,* 676 F.2d 245, 248 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982); *In Re Transocean Tender Offer Securities Lit.,* 427 F.Supp. 1211, 1220 (N.D.Ill.1977).

When they intervened in the reorganization litigation, Chicago and Cook County became parties to whom principles of collateral estoppel apply. *See Deaktor v. Henner,* 517 F.Supp. 26, 27 (N.D.Ill.1980); 18 Wright, Miller & Cooper, *Federal Prac-*

---

F.2d 196, 199 n. 4 (7th Cir.1982); *Lambert v. Conrad,* 536 F.2d 1183, 1186 (7th Cir.1976). Moreover, defendant Arthur Andersen & Co., the accountant of the corporate parties, is in privity with them because it is alleged to be their coconspirator. *See Ruskay v. Jensen,* 342 F.Supp. 264, 271 (S.D.N.Y.1972), *aff'd sub nom. Ruskay v. Waddell,* 552 F.2d 392 (2d Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977).

7. See *supra* note 2 for the text of 28 U.S.C. § 1738.

8. As the Court of Appeals for the Seventh Circuit noted in *Whitley v. Seibel,* 676 F.2d 245, 248 n. 1, it is not necessary for litigants to have been parties or privies to parties in a prior proceeding in order to assert collateral estoppel. It can be invoked by defendants who were not parties to an earlier proceeding against plaintiffs who were parties to the prior litigation. *Id.* All defendants in these cases, therefore, can reap the benefits of the preclusive effect of the state court findings if the requirements of collateral estoppel are satisfied.

*tice and Procedure:* Jurisdiction § 4449, p. 412 (1981). Even after voluntarily dismissing their counterclaims, the City and County elected to remain parties to the state proceeding in their capacity as intervening defendants. They argue, however, that, although they remained in the suit as party defendants, the voluntary dismissal of their counterclaims greatly limited for them the preclusive effect of Judge Schaller's determinations. In particular, the City and County contend that the only issue actually litigated by them was whether the Illinois Commerce Commission could lawfully exercise jurisdiction over the Peoples Energy reorganization. They point out that the state court, in deciding this particular question, found merely that the Commerce Commission had no basis for asserting jurisdiction over the reorganization; it was accomplished by a transferring between Peoples Energy and MidCon the stock of companies that are nonutilities, and did not involve the regulated utilities, Peoples Gas and North Shore. In particular, the City and County emphatically protest defendants' contention that an estoppel exists with respect to findings by the state court concerning the effect of the reorganization on the public interest; those issues, according to plaintiffs, were contested only because they were raised in the counterclaims of the other intervening defendants.

Defendants, on the other hand, point out that plaintiffs, if they wished, could have avoided collateral estoppel by withdrawing from the state suit entirely. Each of the plaintiffs in this federal case, however, despite withdrawing its counterclaim in the state proceedings, elected to remain, as Judge Schaller noted, "a party defendant with all the rights of a party". Moreover, as the judge further observed, each "participated fully in the trial on the merits." Defendants further emphasize the denial by Judge Schaller of the motion of the City and County for an order *in limine* which would have excluded from the state proceedings all evidence pertaining to public interest issues, including evidence concerning the impact of the reorganization and related transactions on the public interest.

They argue that the trial for a permanent injunction, therefore, squarely placed in issue the propriety and legality of the reorganization and related transactions; Chicago and Cook County, consequently, according to defendants, should be estopped by Judge Schaller's findings from making certain crucial allegations in these cases.

■ As is apparent, the focus of the dispute between these parties is on which issues were actually litigated and decided with respect to Chicago and Cook County in the Circuit Court of Cook County. An issue is actually litigated and decided when it is properly placed in dispute and is resolved by the trier of fact. *Continental Can Co., U.S.A. v. Marshall,* 603 F.2d 590, 596 (7th Cir.1979); Restatement (Second) Judgments § 27, comment d. The City and County maintain that the only issues properly raised, as to them, are those raised in connection with their answers, since their countercomplaints were dismissed voluntarily. Specifically, they argue that findings by the state court on issues invoked by the counterclaims of the other intervening defendants, and by their own dismissed counterclaims, have no bearing on them because these issues were unrelated to their answers. This court disagrees. The state proceedings were initiated when Peoples Energy and its affiliates filed a complaint which sought declaratory and injunctive relief prohibiting the Illinois Commerce Commission from asserting jurisdiction over the reorganization. By intervening as defendants in the action and filing answers, the City and the County, in essence, requested the court to deny the affiliated corporations the injunctive and declaratory relief they sought.

In order to obtain permanent injunctive relief, an equitable remedy, from the Circuit Court of Cook County, Peoples and its affiliates had to do more than establish under state law that the Illinois Commerce Commission lacked jurisdiction because of the form taken by the reorganization; they also were required to demonstrate that they would be irreparably harmed if the injunction against the Commission did not

issue, that there was available no adequate remedy at law, and that the public interest would not be disserved by issuance of the injunction. A review of Judge Schaller's findings and opinion shows that the state-court determinations claimed by defendants in these cases to form a basis for collateral estoppel were all made in conjunction with deciding Peoples' claim for permanent injunctive relief—a claim to which Chicago and Cook County voluntarily remained defendants after withdrawing their counterclaims. In particular, the findings that plaintiffs want most desperately to avoid in these cases—those regarding the effect of the reorganization on rates charged to and the quality of services received by gas consumers—were reached in the section of Judge Schaller's opinion concerned with whether issuance of the injunction in the affiliated corporations' favor would disserve the public interest.

It is true that these same findings also provided grounds for denying the counterclaims raised in the state court by intervening defendants other than Chicago and Cook County; but it is hardly surprising that determinations supporting a grant of relief in favor of Peoples and its affiliates would, on the other hand, warrant a denial of the affirmative relief sought by intervenors who maintained counterclaims. Contrary to arguments made by the City and County, it is clear that the issues with respect to which collateral estoppel is asserted were not uniquely raised in the state proceedings by the counterclaims of the other intervening defendants; these issues were also highly relevant to the affiliated corporations' case for injunctive relief, to which Chicago and Cook County were undeniably defendants. By using findings on these issues as a basis for collateral estoppel, the court would not, as the City and County contend, unfairly bind them through factual determinations made solely in conjunction with an aspect of the case to which they were not parties.

Therefore, the question before this court is whether issues which were within the scope of an earlier action were actually litigated for collateral estoppel purposes with respect to parties who took the position that the issues were irrelevant and presented little evidence regarding them, although other parties to the proceeding raised and produced extensive evidence on the issues and the court, in granting judgment, resolved the issues. In *Continental Can Co., U.S.A., v. Marshall*, 603 F.2d 590 (7th Cir.1979), the court of appeals for this circuit was confronted with a situation similar to that now before this court. There, the Secretary of Labor had taken the position in a prior administrative proceeding, to which principles of collateral estoppel applied, that the issue of the economic feasibility of engineering controls was irrelevant and, accordingly, had presented little evidence on the issue at the hearing to refute the evidentiary showing of Continental Can. 603 F.2d at 592. On administrative appeal, the Occupational Safety and Health Review Commission ruled that the issue of economic feasibility was indeed relevant and used it as a basis for ruling against the Secretary and in favor of Continental Can Co. *Id.* In a subsequent proceeding, the Secretary reasoned that there should be no collateral estoppel as to economic feasibility because that issue had not been actually litigated in the prior proceeding since he regarded the issue as irrelevant and, consequently, had not presented much evidence. 603 F.2d at 596. The court emphatically rejected this argument, observing that "[a]ny other result would permit a litigant to avoid the conclusive effect of collateral estoppel, by design or by inadvertence, by denoting as irrelevant an issue clearly raised by his opponent and by refusing to introduce evidence on the issue." *Id.*

Similarly, in these cases, Chicago and Cook County should not be allowed to avoid the collateral estoppel effect of the findings of the state court by asserting their own failure to contest and produce evidence on issues clearly raised by Peoples Energy and its affiliates with respect to their request for injunctive and declaratory relief.

The application of collateral estoppel in these cases is all the more justified because other intervening defendants, whose interests were similar to those of the City and County, did actively oppose the Commission on the issue whether it was in the public interest to issue an injunction in favor of the affiliated corporations. In *Blankner v. City of Chicago*, 504 F.2d 1037 (7th Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1678, 44 L.Ed.2d 101 (1975), plaintiff, a party to previous state condemnation proceedings who did not address in the state forum the issue whether property had been taken for a private purpose, sought to litigate that issue in a civil rights action in federal court. The court of appeals, however, held that the party was collaterally estopped from litigating this issue because it was addressed by *amici curiae* and was decided by the Illinois Supreme Court. 504 F.2d at 1041. The case for collateral estoppel is even stronger in these suits because the issues with respect to which collateral estoppel are asserted were addressed not by *amici curiae*, but by other party defendants whose interests in the litigation were similar to those of the County and the City. The teaching of *Blankner* and *Continental Can* with respect to the present cases is clear: in a multi-party proceeding, such as that before the Circuit Court of Cook County, parties cannot manipulate the preclusive effect of state court findings by letting other parties, with whom their interests are aligned, fight the battle for them by presenting all the opposing evidence on certain issues properly raised by the opposing parties. In these cases, issues concerning the effect on the public interest of issuing an injunction against the Illinois Commerce Commission were properly raised and thoroughly contested in the state suit; these matters, moreover, were decided by the state court. The City of Chicago and the County of Cook cannot avoid collateral estoppel by arguing that they attempted not to litigate issues which were at the heart of the state proceedings.

Plaintiffs argue that collateral estoppel cannot be asserted against them, in any event, because they did not have a "full and fair opportunity" to be heard in the state court on the issues with respect to which estoppel is asserted. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 328–330, 99 S.Ct. 645, 650–651, 58 L.Ed.2d 552 (1979); *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Butler v. Stover Bros. Trucking Company*, 546 F.2d 544, 551 (7th Cir.1977). The extensiveness and thoroughness of the state proceedings belie this contention. The permanent injunction hearing in the state court lasted about 19 trial days; moreover, the testimony of 17 witnesses and nearly 300 exhibits were introduced into evidence during the course of the trial. As Judge Schaller noted, the Cook County and Chicago as intervening defendants had all the rights of the other parties and, in fact, participated fully in the trial on the merits. Indeed, Cook County even called an expert witness on the issue of the effect of the reorganization on the cost of capital to the utilities.

The City of Chicago claims, however, that its participation in the state proceedings was not full and fair because, in granting it leave to intervene, Judge Schaller barred the City from raising new issues and adding new parties. This argument begs the question, however, because collateral estoppel is not sought here with respect to issues which were somehow new to the state proceedings; it is sought with respect to issues which were already before the court at the time of the City's intervention, issues which Chicago undoubtedly had a full and fair opportunity to litigate in the state court. Finally, Cook County argues that granting preclusive effect to the findings made by the state judge in the permanent injunction hearing will deprive it of a claimed Seventh Amendment right to have a jury decide the issues underlying its RICO claim. This argument was laid to rest, however, in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. at 333–337, 99 S.Ct. at 652–654 (1979), when the Supreme Court squarely held that the Seventh Amendment is not violated when findings in a proceeding at equity are given collateral estoppel

effect in a subsequent action brought pursuant to a federal statute under which there is a right to trial by jury. Chicago and Cook County undoubtedly had a full and fair opportunity in the state court to litigate the issues decided by Judge Schaller in granting Peoples Energy and its affiliates permanent injunctive relief against the Illinois Commerce Commission's assertion of jurisdiction over the reorganization. Therefore, the only remaining ground on which the City and County can conceivably defeat the application of collateral estoppel is that the findings with respect to which preclusion is sought were not necessary to Judge Schaller's judgment in favor of the Peoples' affiliates.

Plaintiffs do not argue that it was unnecessary to the state court's judgment for Judge Schaller to have made findings about the scope of the Illinois Commerce Commission's jurisdiction over the reorganization. They contend, however, that the determinations made in deciding whether the public interest would be disserved by issuing an injunction in favor of the affiliated corporations were unnecessary because the injunction itself was unnecessary; the legal remedy of declaratory relief, they assert, was all that was needed. However, one of the other basic determinations that Judge Schaller had to make before issuing the injunction was that Peoples and its affiliates lacked an adequate remedy at law. In reaching this conclusion, he specifically noted that legal remedy of declaratory relief was not as clear, practical, prompt, and efficient as injunctive relief. His findings on the effect of the reorganization on the public interest, therefore, were necessarily decided.

Nor is there a basis for arguing that the findings made by Judge Schaller concerning Peoples' dividend and reinvestment policies prior to the reorganization were unnecessary to the determination whether the public interest would be disserved by enjoining interference with the reorganization. If Peoples Energy had impaired the capital of its utility subsidiaries through exacting exorbitant, illegal dividends, and diverting those funds to the use of its nonutility subsidiaries, the company and its affiliates clearly would have no standing to seek from a court in equity injunctive relief preventing interference with a reorganization which would have removed assets properly belonging to the utilities beyond the scrutiny of the commission charged with safeguarding the public's interest in such properties. Granting an injunction under those circumstances clearly would have been a disservice to the public interest. Judge Schaller's inquiry into the companies' dividend and investment policies prior to the reorganization, therefore, was necessary to his decision to enter a permanent injunction in their favor. These findings, accordingly, are also to be accorded collateral estoppel effect. Whether Judge Schaller's determinations lay the foundation for entering a judgment in favor of defendants in these cases depends, of course, on the extent to which those findings are identical to issues raised in this court by plaintiffs' claims under RICO. In order to make this assessment, the requirements of the RICO statute and the allegations against defendants in these cases must be placed in proper perspective.

RICO, 18 U.S.C. §§ 1961–1968, is primarily a criminal statute that was enacted to help federal law enforcement agencies combat the infiltration of businesses by organized crime. *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981). Congress felt, however, that the goals of the Act would be significantly fostered if private citizens were given, through a treble damages remedy, incentive to file civil suits when they were victimized by the operation of a racketeering enterprise. Accordingly, 18 U.S.C. § 1964(c), providing as follows, was added to the statute:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor ... and shall recover threefold the damages he sustains....

Consequently, plaintiffs would be able to recover treble damages under section 1964(c) only if they proved (1) that defend-

ants violated 18 U.S.C. § 1962 and (2) that plaintiffs were injured in their business or property by reason of this violation.

The City and County allege that defendants in this case transgressed subdivisions (c) and (d) of section 1962. Section 1962(c) provides that

[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

In these cases, section 1964(d) is invoked only insofar as it condemns conspiracies to violate subdivision (c). According to the definitions section of the Act, the "pattern of racketeering activity" requirement of section 1962(c) is satisfied, *inter alia*, by two or more acts that are indictable under certain sections of Title 18 of the United States Code; included among those sections is the provision relied on by plaintiffs in these cases—18 U.S.C. § 1341—the federal mail fraud statute. *See* 18 U.S.C. § 1961(1), (5). The basic elements of a mail fraud offense are (1) the intentional devising of a scheme to defraud and (2) use of the mails for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *United States v. Azzarelli Const. Co.*, 612 F.2d 292, 298 (7th Cir.), *cert. denied*, 447 U.S. 920, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980).

In these cases, plaintiffs allege that defendants devised a scheme to defraud the consumers of Peoples Gas and North Shore, the two utility subsidiaries of Peoples Energy, by causing these utilities to breach their duty under Illinois law to provide adequate and efficient service at just and reasonable rates. Upon review it becomes apparent that, although recast to fit RICO, the allegations that are at the core of the "scheme to defraud" pleaded by Chicago and Cook County, already have been adjudicated adversely to them in the Circuit Court of Cook County. That court, too, concerned itself with the legality, propriety, and impact of the corporate defendants' reorganization as well as the legality, propriety, and impact of their dividend pay out and investment practices which preceded the reorganization. As the court will show, findings made by Judge Schaller in deciding these questions, therefore, estop plaintiffs from asserting in this court the essential allegations of their RICO claims.

It is alleged that the scheme to defraud began with the pay out of excessive dividends from the utility subsidiaries to Peoples Energy. But Judge Schaller specifically found that these same dividend payments were neither excessive, illegal, or improper. In a similar vein, plaintiffs further charge in this court that defendants fraudulently misrepresented that the dividends were not excessive. But, since the state court determined that the dividends were not excessive, these statements, their truth sustained, cannot in the trial of these cases, be found fraudulent by a jury or by this court.

The next stage of the alleged scheme to defraud consumers involved defendants' use of these supposedly excessive dividends to finance Peoples Energy's nonutility investments while misrepresenting the effect of the investment program on the utility subsidiaries. Again, however, Judge Schaller made specific findings to the contrary. He concluded that defendants' decision to invest these dividend payments in the nonutility subsidiaries instead of in the utilities was legal and proper. Furthermore, the state court determined that Peoples Energy's dividend pay out and investment policies did not adversely affect either the quality of service rendered or the rates charged by the utility subsidiaries.

The scheme to defraud continued, plaintiffs allege, when defendants made plans to transfer Peoples Energy's nonutility investments to MidCon, but neglected to disclose those reorganization plans to the public or to the Illinois Commerce Commission until January 1981. The reorganization eventually took place in December 1981. But it is

well established that a failure to disclose is fraudulent only where there is a duty to disclose. *See, e.g., Salisbury v. Chapman,* 527 F.Supp. 577, 580 (N.D.Ill.1981). Judge Schaller determined that the reorganization was outside the Illinois Commerce Commission's jurisdiction because the transaction did not involve the utility subsidiaries. Defendants, therefore, were under no duty at all to report their reorganization plans to the Commission. Yet they voluntarily disclosed their plans nearly a full year in advance of when the reorganization actually took place. Even viewing these allegations favorably to plaintiffs, the court concludes that there is absolutely no basis for concluding that this alleged failure to disclose was fraudulent.

Finally, the scheme to defraud and the reorganization became complete when the nonutilities, allegedly capitalized by payments illegally derived from the utilities, were transferred to MidCon. Consequently, plaintiffs claim, the utilities became undercapitalized and consumers, as a result, bore the burden of paying higher gas bills for less efficient service, even though defendants had stated that the reorganization would not impair the viability of the utilities or adversely affect gas rates. Again, however, Judge Schaller has already decided these matters against plaintiffs. He determined that the reorganization did not impair the financial viability of the utility subsidiaries, their ability to raise capital, or their ability to serve their customers. Given the legality and propriety of defendants' dividend and investment policy, the court further found that consumers had no right to claim benefits in the investments that had been made in the nonutility subsidiaries. Moreover, the court determined that under Illinois law the Commission, in setting rates for utilities, can consider only their earnings and assets; the earnings and assets of Peoples Energy and the nonutility subsidiaries, therefore, were irrelevant to the determination of rates. Consequently, the court concluded, no damage was caused to the utilities or to their consumers when the nonutility subsidiaries were transferred to MidCon.

Collateral estoppel, therefore, not only prevents plaintiffs from asserting as true in this court elements necessary to make a showing that defendants engaged in a scheme to defraud; it deprives them of standing under 18 U.S.C. § 1964(c) altogether since they, in their posture as consumers of utility services, cannot establish, given Judge Schaller's findings, that they were injured by reason of anything done by defendants. The court, accordingly, dismisses with prejudice the complaints of the City of Chicago and the County of Cook.

III

Moreover, the court concludes that the complaints of Chicago and Cook County have to be dismissed even if collateral estoppel did not prevent the filing of these suits. Plaintiffs oppose defendants' motion to dismiss pursuant to Rule 12(b)(6) primarily by invoking the recent pronouncements of the Court of Appeals for the Seventh Circuit in *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983). In that case, the court emphatically rejected one of the arguments raised by defendants in these cases—that, as with the antitrust laws, the RICO statute's treble damages remedy is only available to those who have suffered "competitive" or "indirect" injuries. 711 F.2d at 1356–1358. In rejecting the "competitive" injury barrier erected in some civil RICO cases, the court, however, recognized that, as required by the plain wording of 18 U.S.C. § 1964, plaintiffs still have to allege that they incurred injuries to their business or property "by reason of a violation of section 1962." 711 F.2d at 1358. Courts have almost universally interpreted this language to mean that plaintiffs must be injured by reason of the operation of an enterprise through a pattern of racketeering activity, not by reason of the commission of an underlying predicate offense like mail fraud. *See, e.g., Haroco, Inc. v. American National Bank and Trust Company of Chicago,* and cases cited, 577 F.Supp. 111 at 113–14 (N.D.Ill.1983).

The court did not endeavor in *Schacht* to formulate on the basis of the case before it a definitive construction of the "by reason of" language in section 1964; it found merely that the allegations of the complaint in that case were within the scope of civil RICO's prohibitions. The plaintiff in that case was the Director of Insurance of the State of Illinois, in his capacity as statutory liquidator, suing on behalf of Reserve Insurance Company. 711 F.2d at 1344. On one level, the allegations in these cases resemble those in *Schacht;* for instance, it was alleged in *Schacht* that Reserve's parent corporation fraudulently caused it to transfer its most valuable assets to other subsidiaries. *Id.* at 1345. However, allegations like these were not the focus of the case for purposes of the exercise of federal jurisdiction. The court noted that the gravamen of the complaint was that Reserve was victimized by the fraudulent operation of its parent corporation in such a manner that the State Department of Insurance was defrauded, thereby allowing Reserve to continue in operation long after it was insolvent and, consequently, exacerbating its financial woes. *Id.* at 1345, 1359. In sustaining the Director's complaint, the court emphasized that he alleged more than injuries that were a consequence of financial losses stemming directly from the mail fraud violations supposedly providing a predicate for the invocation of RICO. *Id.* at 1359.

■ In these cases, however, even though mention is made of the Illinois Commerce Commission, it is clear from the complaints of Chicago and Cook County that these municipal corporations are seeking redress solely for injuries caused by the underlying mail fraud offenses which allegedly facilitated the transfer to MidCon of property properly belonging to the utilities and the public. By their own characterization, the injuries they supposedly sustained were caused by defendants' scheme, through use of the mails, to defraud consumers of their right to receive adequate and efficient utility service at just and reasonable rates; accordingly, they have

failed to allege injuries caused by reason of a violation of section 1962.

As is clear from this court's analysis, the *Schacht* opinion is not, as plaintiffs maintain, an absolute barrier to the dismissal of their complaints for failure to state a claim; indeed, such a dismissal would be consistent with the analysis of the court of appeals in that case. *Accord, Haroco, Inc. v. American National Bank and Trust Company of Chicago, supra,* slip op. at 7–8.

■ Additionally, the City and County would be unable to state a claim even if they were allowed to reframe their pleadings in an attempt to describe a *Schacht* type injury resulting from alleged misrepresentations made to the Illinois Commerce Commission, or if they were allowed to base their RICO claims solely on injuries caused directly by the alleged mail fraud. This is because the complaints on their face fail to plead facts sufficient to describe violations of the federal mail fraud statute, 18 U.S.C. § 1341. The court, of course, is mindful of its obligation under federal pleading practice to construe complaints liberally in favor of plaintiffs on a motion to dismiss. *See, e.g., Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). However, it is equally established that the court need only accept the truth of facts well pleaded in a complaint; conclusory allegations, unsupported by facts, cannot withstand a motion to dismiss. *See, e.g., Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Decker v. Massey Ferguson, Ltd.,* 681 F.2d 111, 121 (2nd Cir.1982). Moreover, Rule 9(b), Fed.R. Civ.P., mandates that plaintiffs plead circumstances constituting fraud with particularity.

As previously noted, in order to establish violations of the mail fraud statute, plaintiffs must show both that defendants devised a scheme to defraud and used the mails in furtherance of the scheme. When the complaints of Chicago and Cook County are scrutinized in light of applicable legal principles, it becomes apparent that they

can satisfy neither of the pleading requirements of mail fraud. Plaintiffs allege that the scheme to defraud emanated from defendants' extraction of excessive dividends from the utility subsidiaries; this dividend practice was fraudulent, plaintiffs basically allege, because defendants misrepresented to the public and to the Illinois Commerce Commission that the dividends were not excessive and that the dividend practice would benefit the utilities and their consumers.

The misrepresentations alleged, however, can support a finding of a scheme to defraud only if they were "reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Beitscher*, 467 F.2d 269, 273 (10th Cir. 1972). Cast in a more traditional formulation, a representation is not fraudulent, even if technically untrue, if the parties to whom it is made should know that they cannot reasonably rely on it as a basis for action. In these cases, the focus of the court's analysis, therefore, is on whether the Illinois Commerce Commission, the body of experts authorized to act in the public's interest with regard to the fair and efficient operation of utilities, could have reasonably relied on the misrepresentations described by Chicago and Cook County. Intriguingly, plaintiffs have not claimed that defendants ever misrepresented to, or concealed from, the Commission the amounts of the dividends paid out by the utilities; nor is it alleged that defendants falsified reports and statements filed with the Commission describing the financial status and dealings of the utilities. It is apparent, therefore, that the Commissioners could not reasonably rely on defendants' bare statements, essentially expressions of opinions, that the dividends were not excessive when they had at their disposal facts sufficient to make their own independent evaluation of the effect of the dividend payments on the subsidiaries. Moreover, defendants' alleged representations that the dividend practices of the Peoples group would benefit the subsidiaries cannot serve as the basis of a fraud claim. Once again, the Illinois Commerce Commis-

sion was in a position to make its own independent evaluation of the effect on the subsidiaries of the financial practices of the companies, and could not reasonably rely on vague, conclusory statements of the type alleged by plaintiffs. Moreover, this court must assume that the Commissioners were aware that under Illinois law they can consider, for purposes of setting rates, only property belonging to the utilities which was already dedicated to public use. *See Union Electric Co. v. Illinois Commerce Commission*, 77 Ill.2d 364, 383, 33 Ill.Dec. 121, 396 N.E.2d 510 (1979). Accordingly, the Commissioners knew, when assessing the financial status of the utility subsidiaries, that they had to disregard the assets of the parent company and those of other subsidiaries. It is apparent, therefore, that Chicago and Cook County have not and cannot plead a scheme implemented by defendants which was reasonably calculated to deceive.

Not only do plaintiffs fail to plead facts showing the implementation of a scheme to defraud, they, surprisingly, barely address in their protracted pleadings the second element needed to describe a violation of 18 U.S.C. § 1341—the use of the mails in furtherance of the alleged scheme to defraud. In this regard, they allege only that the scheme to defraud was furthered by defendants' use of the mails to send proxy statements, Form 10–K filings to the Security and Exchange Commission, annual reports, press releases, transfers of assets, and various correspondence, including communications between officers and directors. These mailings, except for proxy statements that defendants issued when shareholder approval of the Peoples reorganization was sought, are not mentioned anywhere else in the complaint. Therefore, but for the one instance, plaintiffs fail to describe the contents of these mailings, when they were made or how they relate to the alleged scheme to defraud. The court, accordingly, is not obligated to sustain the complaints of Chicago and Cook County by accepting the truth of the conclusory allegations that these mailings were made in

furtherance of the alleged scheme to defraud.

Furthermore, even the proxy statements issued by defendants when shareholder approval of the reorganization was sought, the only mailing plaintiffs provide some details about, cannot be used to support the charges of mail fraud. Legally compelled mailings, such as proxy statements, do not satisfy the use-of-the-mails requirement of 18 U.S.C. § 1341 unless they are false or fraudulent in their own content. *See United States v. Curry*, 681 F.2d 406, 412 (5th Cir.1982). Chicago and Cook County allege simply that the proxy statement issued by defendants employed "inconsistent accounting methods" through which dividends declared on common stock for Mid-Con were determined on a different basis than dividends declared on common stock for Peoples Energy; therefore, plaintiffs conclude, defendants were able to conceal "the intentionally indirect transfer of assets from Peoples Gas Light and North Shore to MidCon."

The court finds these allegations not only to be conclusory, but also overly vague and ambiguous. No allegations are set forth describing how defendants went about employing the allegedly inconsistent accounting bases or how the use of these bases could conceal a transfer of assets. Moreover, it is not alleged that the use of these bases was a willful departure from generally accepted accounting practices or that defendants failed to disclose the use of the different bases to shareholders. It is well established that plaintiffs who claim that financial statements are fraudulent must allege a great deal more than is alleged here in order to state a claim. *See, e.g., Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 120–121 (2nd Cir.1982); *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087–1088 (S.D.N.Y.1977), *aff'd*, 636 F.2d 1201 (2nd Cir.1980); *Elster v. Alexander*, 75 F.R.D. 458, 461 (N.D.Ga.1977). Accordingly, the court also concludes that Chicago and Cook County have failed to allege facts sufficient to establish that defendants used the mails in furtherance of the scheme to defraud that they likewise inadequately plead. Obviously, plaintiffs have not and cannot allege facts which constitute violations of the mail fraud statute, a predicate in these cases to the court's finding that defendants have violated RICO by conducting the affairs of an enterprise through a pattern of racketeering.

For the stated reasons, this court would have to dismiss the RICO allegations made by Chicago and Cook County for failure to state a claim even if collateral estoppel did not prevent plaintiffs from asserting claims based on these allegations. Defendants' motion to dismiss, accordingly, is granted in the alternative; in doing so, the court does not intend to imply that grounds raised by defendants which it did not address necessarily lack merit.

## IV

In summary, the court dismisses Counts II through IV of the City of Chicago's complaint on the ground of *res judicata*. Furthermore, the complaints of the City of Chicago and of Cook County are dismissed in their entirety on the ground of collateral estoppel. Finally, the alternative motion of the defendants to dismiss the complaints in these actions for failure to state a claim is granted. These suits, accordingly, are dismissed in their entirety.

So ordered.