Joseph R. HARPER and Hazel Harper, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 3:95–cv–155.

United States District Court,
E.D. Tennessee.

March 26, 1996.

J Anthony Farmer, Farmer & Bergwerk, Knoxville, TN, for plaintiffs.

John T· Buckingham, U.S. Department of Justice, Office of U.S. Attorney, Knoxville, TN, for Defendant.

JARVIS, Chief Judge.

### MEMORANDUM OPINION

This action seeks compensatory damages pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* ("FTCA"). More specifically, plaintiffs allege that Joseph R. Harper suffers from chronic beryllium disease as a result of his exposure to beryllium metal and beryllium oxide and beryllium-containing products while he was employed as a machinist by Martin Marietta Energy Systems, Inc., and its predecessor, Union Carbide Corporation, both of which operated Department of Energy ("DOE") facilities in Oak Ridge, Tennessee, pursuant to contract with the defendant. Plaintiffs further allege that Mr. Harper's injuries were proximately caused by the negligent acts or omissions of the DOE.

This matter is presently before the court on defendant's motion to dismiss [Doc. 2]. The issues raised have been thoroughly and well briefed by the parties [*see* Docs. 3, 12, and 13]. For the reasons that follow, defendant's motion will be granted to the extent that summary judgment will be entered in its favor, and this case will be dismissed against it.

### I.

In its pending motion, the defendant contends that this court lacks subject matter jurisdiction over this action because plaintiffs failed to timely file their claims with the DOE prior to filing suit. The FTCA provides in pertinent part:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues....

28 U.S.C. § 2401(b).[1] Here, it is undisputed that plaintiffs filed their claims with the DOE

---

1. The remainder of § 2401(b) provides that the action will also be forever barred if it is not filed within six months after the date of mailing of the final agency denial of the claim. Defendant concedes that this action is not barred by the second limitation period provided for in § 2401(b) because plaintiffs' claims were denied on September 27, 1994, and this action, filed on March 17,

on May 10, 1993. Defendant contends, however, that plaintiffs' personal injury actions accrued on or before April 22, 1991, a date outside this two-year limitation period. The basis for defendant's position with respect to when these personal injury actions accrued, *i.e.*, April 22, 1991, is a ruling by the Honorable Thomas G. Hull, a United States Judge of this District, on December 28, 1993, dismissing a similar action then pending before him. In particular, defendant contends that the doctrine of collateral estoppel bars plaintiffs from relitigating the issue of when their personal injury causes of action accrued because Judge Hull has already decided that precise issue in that previous litigation. Plaintiffs, on the other hand, respond that Judge Hull's order of December 28, 1993, does not provide an appropriate basis for the application of collateral estoppel. A resolution of this issue requires the court to examine carefully the record in Judge Hull's case and to analyze that record in light of the applicable law on collateral estoppel.

## II.

On April 22, 1992, these same plaintiffs filed a products liability/personal injury action in this court against a number of companies that allegedly engaged in "the mining, milling, manufacturing, processing, compounding, converting, selling, or distribution of beryllium and/or beryllium-containing products" which were used by Mr. Harper in the course of his employment by Union Carbide Corporation and Martin Marietta Energy Systems, Inc. [*see* Doc. 1, pp. 2–3, in 3:92–cv–258].[2] And, just as in the instant case, Mr. Harper sought compensatory damages in the amount of $5 million and Mrs. Harper sought compensatory damages in the amount of $1.5 million [*see id.*, p. 9]. Additionally, and unlike the instant case, plaintiffs sought punitive damages in the amount of $3 million [*see id.*]. That case, as previously noted, was assigned to Judge Hull of this district.

On November 10, 1992, Mr. Harper filed his responses to the master interrogatories propounded to him by the defendants [*see* Doc. 26]. On November 16, 1992, the Harpers' attorney and eight attorneys representing the manufacturers/defendants held a preliminary discovery meeting [*see* Doc. 12, Exs. 1–3 in 3:95–cv–155]. At that meeting, it was agreed that, because Mr. Harper's exposure occurred more than ten years prior to the filing of his lawsuit, then the issue regarding the Tennessee products liability statute of repose, T.C.A. § 29–28–103,[3] should be resolved before any other legal or factual issues would be addressed [*see id.*]. With defense counsel's consent, the Harpers' attorney then announced a stipulation as to Mr. Harper's exposure history and no further discovery of the Harpers was conducted [*see id.*].

Pursuant to counsel's agreement, the defendants, on December 29, 1992, filed a joint motion for judgment on the pleadings and/or for summary judgment based upon the ten-year statute of repose [*see* Doc. 35; *see also* Doc. 12, Exs. 1–3, in 3:95–cv–155]. Furthermore, in keeping with that agreement, plaintiffs' counsel notified a law clerk for Judge Hull that "no other matters would be addressed, legal or factual, pending the final disposition by the Court of the issue of the constitutionality of the Tennessee statute of repose for products liability actions." [*See* Doc. 12, Ex. 1, ¶ 9, in 3:95–cv–155]. On April 8, 1993, plaintiffs filed a response to defendants' joint motion for judgment on the pleadings and/or for summary judgment [*see* Doc. 43]. It must be emphasized that, in keeping with counsel's agreement, plaintiffs' response addressed only the issue raised by defendants regarding the ten-year statute of repose [*see id.; see also* Doc. 12, Ex. 1, ¶ 9, in 3:95–cv–155]. On April 20, 1993, Judge Hull denied defendants' motion [*see* Doc. 46]. Additionally, in that order, Judge Hull certified

1995, is well within six months of the date of the denial of plaintiffs' claims [*see* Doc. 3, p. 4 n. 1].

**2.** Unless otherwise noted, all docket references in Section II of this opinion are to Judge Hull's case, 3:92–cv–258.

**3.** This statute provides, in pertinent part, as follows:

**Limitation of actions—Exception.**—(a) any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought ... within ten (10) years from the date on which the product was first purchased for use or consumption, .... T.C.A. § 29–28–103(a).

to the Attorney General of the State of Tennessee that "the plaintiffs have raised a question of the federal constitutionality of [the ten-year statute of repose]" [*see id.*, p. 4]. Judge Hull therefore requested that the Attorney General notify the court, within 30 days, if he intended to intervene in that action "to present evidence or argument regarding the constitutionality of this statute." [*See id.*]. No other issue was raised or addressed in that order.

On May 26, 1993, the Tennessee Attorney General filed his notice of intent to intervene [*see* Doc. 47]. However, before he did so, two other significant events occurred. First, on July 14, 1993, defendant Brush Wellman, Inc., filed a motion for summary judgment with a supporting memorandum raising "the government contractors' defense" [*see* Doc. 49]. Second, on September 17, 1993, this same defendant filed a motion for summary judgment with a supporting memorandum raising the one-year statute of limitations defense for personal injury actions set forth in T.C.A. § 28-3-104 [*see* Doc. 57]. Plaintiffs did not respond to either one of these motions. On November 22, 1993, the Tennessee Attorney General filed a motion to dismiss plaintiff's challenge to the constitutionality of the ten-year statute of repose with a supporting memorandum [*see* Doc. 63 and 63A].

On December 28, 1993, Judge Hull filed a four-page order [Doc. 64] which is at the very heart of the pending motion to dismiss. In that order, Judge Hull discussed the fact that there were three bases for granting the pending motions for summary judgment:

(1) the ten-year statute of repose;

(2) the one-year statute of limitations for personal injury actions; and

(3) the "government contractors' defense."

[*See id.*]. The language in Judge Hull's order with respect to the one-year statute of limitations defense must be set forth with particularity:

Another of the pending summary judgment motions contends that the Harper's (sic) case is also time-barred under the one-year statute of limitations for personal injury actions, Tenn.Code Ann. § 28-3-104. [Doc. 57]. Based on Mr. Harper's answers to interrogatories, they contend that he should have discovered his condition more than one year prior to the filing of this complaint.

[*See id.*, p. 3]. Judge Hull then concludes his order with the following:

In light of the fact that the plaintiffs have not opposed the motion for summary judgment on the one-year statute of limitations, the Court hereby **FINDS** this action time-barred both because it was filed more than one year after Mr. Harper should have known of his injury and because his date of exposure falls outside the ten-year statute of repose. The Court does not reach the question of a government contractors defense.

Accordingly, the defendants' motions for summary judgment [Docs. 35 and 57] are hereby **GRANTED** and this action is **DISMISSED**.

[*See id.*, p. 4].

As previously noted, the sole issue raised by the pending motion is whether the doctrine of collateral estoppel will bar plaintiffs from relitigating when their personal injury cause of action accrued. Defendant contends that based on the above record and, in particular, the order of December 28, 1993, this precise issue has already been decided adversely to plaintiffs by Judge Hull; plaintiffs respond, among other things, that the accrual issue was not "actually litigated" and that Judge Hull's determination on that issue was not "necessary" to his final judgment.

III.

It is well settled that "[t]he doctrine of collateral estoppel dictates that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *N.A.A.C.P., Detroit Branch, v. DPOA*, 821 F.2d 328, 330 (6th Cir.1987) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) and citing generally C. Wright, *Law of Federal Courts* 678-96 (4th ed.1983)). The court in *N.A.A.C.P., Detroit Branch*, then set forth the four specific requirements which must be

met before collateral estoppel may be applied to bar litigation of an issue:

    (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

    (2) determination of the issue must have been necessary to the outcome of the prior proceeding;

    (3) the prior proceeding must have resulted in a final judgment on the merits; and

    (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

821 F.2d at 330. The court will now examine each of these four requirements in the context of the previous litigation.

### A.

The first requirement which must be met before collateral estoppel may be applied to bar litigation of an issue is whether the precise issue raised in the present case was also raised and actually litigated in the prior proceeding. 821 F.2d at 330. Here, the parties do not seriously dispute the fact that the precise issue raised in this case was also raised in the case before Judge Hull. Indeed, even if the plaintiffs were to maintain such a position, it is readily apparent from Judge Hull's order filed on December 28, 1993, that such a position would be totally without merit. Judge Hull clearly held that plaintiffs' action was "time barred ... because it was filed more than one year after Mr. Harper should have known of his injury...." [See Doc. 64, p.4, in 3:92–cv–258]. Because the complaint in Judge Hull's case was filed on April 22, 1992, Judge Hull ruled, in effect, that Mr. Harper's cause of action must have accrued on or before April 22, 1991—otherwise, it would not have been outside the one-year limitation period. And, as previously noted, even though Judge Hull's ruling was directed at a different limitation period, i.e., the one-year statute of limitations for personal injuries set forth in T.C.A. § 28–3–104, Judge Hull's ruling would, if applicable to the facts of this case, bar the instant action because the claims in the instant case were filed with the DOE on May 10, 1993, and were therefore not filed within two years of their accrual. See 28 U.S.C. § 2401(b).

The real dispute surrounding the first requirement is whether or not the issue regarding the one-year statute of limitations in Judge Hull's case was "actually litigated." In support of their position that this issue was not, plaintiffs rely upon the following facts: (1) the Harpers did not dispute the issue regarding the one-year statute of limitations based upon an agreement among the parties that this issue would not be litigated until the statute of repose issue had been decided; (2) no discovery was conducted on the statute of limitations issue, nor did plaintiffs file a response to defendants' motion for summary judgment on that particular issue; and (3) Judge Hull's law clerk was notified that no other factual or legal issues would be addressed until the statute of repose question was finally resolved.

■ In considering whether the issue was "actually litigated," the court finds instructive the following language in *Continental Can Co., U.S.A. v. Marshall*, 603 F.2d 590 (7th Cir.1979):

The requirement of collateral estoppel that the issue be "actually litigated" does not require that the issue be thoroughly litigated. Collateral estoppel may apply "no matter how slight was the evidence on which a determination was made, in the first suit, of the issue to be collaterally concluded."

603 F.2d at 596 (quoting 1B *Moore's Federal Practice* ¶ 0.441[2], at 3778 (2d ed.1974)). When this definition of "actually litigated" is applied to the facts of this case as they are reflected in Judge Hull's order filed on December 28, 1993, the court readily concludes that this requirement has been met. In his order, Judge Hull makes specific reference to Mr. Harper's answers to interrogatories as supporting defendants' motion for summary judgment with respect to the one-year statute of limitations [see Doc. 64, p. 3, in 3:92–cv–258]. Moreover, as previously noted, Mr. Harper's responses to those master interrogatories are of record in Judge Hull's case [see Doc. 26 in 3:92–cv–258]. There is, thus, evidence in the record to support Judge Hull's finding that the action is time-barred because it was filed more than one year after Mr. Harper should have known of his injury.

Furthermore, the court would describe this type of evidence as something considerably more than "slight" evidence, *see* 603 F.2d at 596, thereby easily satisfying the standard to determine whether an issue has been "actually litigated."

Additionally, plaintiffs' argument that this issue was not "actually litigated" because of the agreement reached with opposing counsel and announced to Judge Hull's law clerk falls short upon closer examination. It must be emphasized that the agreement reached among counsel of record occurred on November 16, 1992. Subsequently, plaintiffs' counsel notified Judge Hull's law clerk that "no other matters would be addressed, legal or factual, pending the final disposition by the court of the issue of the constitutionality of the Tennessee statute of repose for products liability actions." [*See* Doc. 12, Ex. 1, p. 2]. And, consistent with the agreement of the parties, defendants filed their joint motion for judgment on the pleadings and/or motion for summary judgment on December 9, 1992. And, consistent with the telephone call to his law clerk, Judge Hull filed an order on April 20, 1993, in which he addressed only the issue of the statute of repose by denying defendants' joint motion and certifying to the Tennessee Attorney General that the plaintiffs have raised a question of the federal constitutionality of the statute of repose.

On May 26, 1993, the Attorney General's Office advised the court of its intent to intervene in the Harpers' case pending before Judge Hull [*see* Doc. 47 in 3:92–cv–258]. The Attorney General's Office also requested until June 30, 1993, to present a motion to dismiss the constitutional challenge [*see id.*]. On June 1, 1993, Judge Hull granted the Attorney General's request for that extension [*see* Doc. 48 in 3:92–cv–258]. However, the Attorney General's motion and supporting memorandum were not filed until November 22, 1993 [*see* Docs. 63 and 63A in 3:92–cv–258].[4] In the meantime, a number of significant events developed.

On July 14, 1993, defendant Brush Wellman, Inc., filed a motion for summary judgment raising "the government contractors'

defense" [*see* Doc. 49 in 3:92–cv–258]. On September 7, 1993, plaintiff filed a motion requesting up to and including December 15, 1993, within which to file a response to that motion [*see* Doc. 54 in 3:92–cv–258]. On September 13, 1993, Judge Hull filed an order which, among other things, granted plaintiffs' motion for extension of time as requested [*see* Doc. 55 in 3:92–cv–258].

More importantly, on September 17, 1993, this same defendant filed another motion for summary judgment with supporting memorandum raising the one-year statute of limitations defense [*see* Doc. 57 in 3:92–cv–258]. With respect to what happened at this juncture of the litigation, plaintiffs' counsel now testifies as follows:

\*   \*   \*   \*   \*   \*

(14) Subsequent to the filing of the Motion for Summary Judgment based upon the statute of limitations, Affiant contacted the attorney for Brush Wellman, Mr. James, and discussed it with him, as well as with the attorney for Ceradyne, the fact that it had been his understanding and express agreement between lead attorneys that all legal issues and factual issues would be reserved pending the final outcome of the Motion for Summary Judgment based upon the statute of repose. This understanding and agreement was confirmed verbally between your Affiant, Mr. James, and Mr. Wright subsequent to the filing on behalf of Brush Wellman of the Motion for Summary Judgment based upon the Tennessee statute of limitations.

\*   \*   \*   \*   \*   \*

[*See* Doc. 12, Ex. 1, ¶ 14]. Plaintiffs' counsel's testimony on this agreement among counsel is supported by the affidavits of Attorneys James and Wright. [*See id.*, Exs. 2 and 3]. Nevertheless, the court finds it of paramount significance that this subsequent agreement among lead counsel was not communicated to Judge Hull's office, either through his law clerk, or through correspondence, or by agreed order, especially in view of the fact that at least an additional six months had

---

4. Oddly enough, the record does not reflect the entry of any order, agreed or otherwise, which allows the Attorney General an additional five month extension within which to file his motion

to dismiss, nor is there any correspondence in the court file memorializing any such agreement to do so.

passed subsequent to plaintiffs' counsel's last conversation with Judge Hull's office and in further view of the number of motions which had been filed subsequent to that telephone conversation. It must also be emphasized that plaintiffs' counsel filed a motion on September 7, 1993, asking for an extension of time with respect to the motion for summary judgment filed by Brush Beryllium regarding "the government contractors' defense" (the adjudication of which was, according to plaintiffs' counsel's present testimony, reserved until *after* Judge Hull ruled on the statute of repose); yet, plaintiffs' counsel did not file a similar motion for extension of time after Brush Wellman filed its subsequent motion for summary judgment based on the one-year statute of limitations issue. This court can only presume plaintiffs did not do so because they probably realized that Judge Hull would not rule on any of the pending motions for summary judgment until after all such motions were ripe.[5] And plaintiffs knew that these motions would not now be ripe until at least December 15, 1993, because Judge Hull had granted their motion for an extension of time to respond to the motion for summary judgment based on "the government contractors' defense." Thus, it certainly comes as no surprise to this court that, when Judge Hull revisited the parties' joint motion for summary judgment in late December, 1993, he ruled not only in favor of the defendants based on the ten-year statute of repose, but also in defendants' favor with respect to the one-year statute of limitations. He did so based on the evidence in the record and defendants' brief. The court thus finds that the precise issue presently raised was also raised and "actually litigated" in the previous litigation. The first requirement has therefore been met by the defendant in the instant case.

Finally, in ruling as it has on this first issue, the court finds that plaintiffs' reliance on *United States v. Young*, 804 F.2d 116 (8th Cir.1986), is misplaced. In *Young*, the court held that collateral estoppel did not apply to certain facts because the government, in prior litigation, had stipulated or conceded those

facts. The court then made the following observations:

> Collateral estoppel, in contrast to res judicata, applies only to issues that were directly litigated and not to those which merely could have been litigated.... A fact establishing prior litigation not by judicial resolution but by stipulation has not been "actually litigated" and thus is the proper subject of proof in subsequent proceedings....

[804 F.2d at 118]. Here, by contrast, plaintiffs did not concede or stipulate any issues with respect to the one-year statute of limitations. The only facts which they stipulated or conceded were those with respect to the ten-year statute of repose issue. The *Young* case is simply inapposite.

**B.**

The second requirement which must be met before collateral estoppel may be applied to bar litigation is a determination that the issue in the previous litigation must have been necessary to the outcome of that previous litigation. *N.A.A.C.P., Detroit Branch*, 821 F.2d at 330. In support of their position that this requirement has not been met, plaintiffs contend, once again, that counsel of record had agreed that the statute of repose issue would be decided first and then, if necessary, the issues regarding the one-year statute of limitations and "the government contractors' defense" would be fully briefed and decided. Consistent with that agreement, as previously noted, Judge Hull initially ruled on April 20, 1993, regarding the ten-year statute of repose and denied defendants' motion. However, after that point in time, and after defendant Brush Wellman filed its motion for summary judgment based on the one-year statute of limitations, Judge Hull then decided both the statute of repose issue and the statute of limitations issue on December 28, 1993. He did, however, leave "the government contractors' defense" issue undecided.

In *Winters v. Lavine*, 574 F.2d 46 (2d Cir.1978), the court held:

---

**5.** The court takes judicial notice of the fact that the judges of this district prefer not to rule on dispositive motions in a piecemeal manner; rather, they prefer to rule, to the extent possible, on all pending dispositive motions at one time.

It is true that the doctrine of collateral estoppel only bars the relitigation of issues which were not only actually litigated and determined in the original action but which were also "necessary" to the judgment entered in that suit.... Under the circumstances here, where, the existence of an independent basis for denying coverage was an alternative, rather than an exclusive, ground for the [court's] decision, neither that issue nor the constitutional issue previously discussed was "unnecessary." This is so because "[w]here the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment."

*Id.* at 66–67 (citations and quotations omitted). Here, Judge Hull dismissed his case on two grounds: (1) the ten year statute of repose; and (2) the one-year statute of limitations. Plaintiffs argue that the primary focus of Judge Hull's order was the statute of repose; thus, according to plaintiffs, Judge Hull's finding regarding the one-year statute of limitations was unnecessary to the judgment and was, in effect, *dictum.* The court disagrees. Judge Hull clearly and unambiguously decided to dismiss his case for two reasons, although either one alone would have been sufficient to support the order of dismissal. Plaintiffs cannot now contend that his ruling was anything less than necessary to the outcome of the prior proceeding. Defendant has therefore satisfied the second requirement for the application of collateral estoppel.

### C.

. The third requirement which must be met before collateral estoppel may be applied to bar litigation is that the prior proceeding must have resulted in a final judgment on the merits. *N.A.A.C.P., Detroit Branch,* 821 F.2d at 330. Plaintiffs in the instant case apparently do not contest that this requirement was met. Indeed, it would be difficult for them to do so. Unquestionably, Judge Hull's order filed on December 28, 1993, was a final order granting two of defendants' motions for summary judgment and dismissing that case. It was a final determination within the meaning of Rule 54(a), Federal Rules of Civil Procedure, and appealable to the Sixth Circuit Court of Appeals. The record reflects that no appeal was taken; therefore, the result was a final judgment on the merits. Accordingly, the third requirement is easily met by defendant in this case.

### D.

█ The fourth and final requirement before collateral estoppel may be applied to bar litigation is that the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *N.A.A.C.P., Detroit Branch,* 821 F.2d at 330. Here, again, plaintiffs do not directly address this requirement. Rather, they seem to attack this requirement in a backdoor fashion and argue that they lacked the incentive to litigate this issue and/or pursue the issue on appeal. In fact, plaintiffs contend that had they pursued this issue on appeal, then they could have been subjected to sanctions. This argument is simply unavailing.

There is, of course, no question that plaintiffs did not brief the issue of whether the one-year statute of limitations was applicable to the facts of the previous case. Plaintiffs say this is so because of their agreement with counsel for the defendants and the court that the statute of repose issue would be decided first. It was. After which, defendant Brush Wellman filed its motion for summary judgment based on the one-year statute of limitations (as well as its motion based on the government contractors' defense). Defendants' motion regarding the one-year statute of limitations was filed on September 17, 1993 [*see* Doc. 57 in 3:92–cv–258]. Judge Hull's order granting that motion was not filed until more than three months later. Obviously, plaintiffs had ample opportunity to respond to that motion if they had elected to do so. In fact, it must be emphasized again that Judge Hull granted plaintiffs' motion for an extension of time up to and including December 15, 1993, within which to file a response to Brush Wellman's motion for summary judgment regarding "the government contractors' defense" [*see* Doc. 55 in 3:92–cv–258]. If plaintiffs knew that they should file such a motion to prevent a prema-

ture adjudication on that motion, then they should have also done so with respect to the motion for summary judgment based on the one-year statute of limitations. Plaintiffs were certainly not relying on any prior understanding with Judge Hull's law clerk regarding "the government contractors' defense" when they sought additional time to respond. Plaintiffs should have done likewise when the motion at issue was filed.

More importantly, if plaintiffs believed that Judge Hull erred by prematurely adjudicating defendants' motion, then Rule 60(b), Federal Rules of Civil Procedure, provides an immediate mechanism to delete that language and finding from the order. That rule allows the court to relieve a party from a final judgment for such things as "mistake, inadvertence, [or] surprise . . .". Furthermore, that rule allows a party up to one year within which to do so. For whatever reason, plaintiffs filed no motion with Judge Hull asking that he rectify this problem. It is for that reason that plaintiffs' argument with respect to possible sanctions by the court of appeals has little, if any, merit. This court cannot envision Judge Hull imposing any sanctions if plaintiffs had filed a Rule 60 motion in his court. It is also for that same reason that this court is unpersuaded by all of plaintiffs' arguments that collateral estoppel should not apply and that this court should relitigate an issue which Judge Hull has already decided. If plaintiffs wished to modify Judge Hull's order or even be allowed an opportunity to put contradictory proof into the record regarding the one-year statute of limitations, then they had an opportunity to do so in the appropriate forum— before Judge Hull. They did not need to burden either this court or the court of appeals with this issue. The court therefore finds that the fourth requirement for the application of collateral estoppel has been satisfied fully by the defendant.

## IV.

Finally, plaintiffs attempt to avoid the application of collateral estoppel to this case by arguing that: (1) it would result in manifest injustice to the plaintiffs; (2) it would defeat the public policy of conserving time, expense, and judicial resources; and (3) it would discourage the narrowing of issues at trial through party compromise. The court disagrees. To the contrary, to allow this litigation to proceed when the issue with respect to when Mr. Harper's cause of action accrued has already been decided adversely to him would, in effect, waste judicial resources, as well as put both parties to additional expense. While the court recognizes that there may be circumstances when the application of collateral estoppel would violate an overriding public policy, those circumstances are not present in this case. The cases relied on by plaintiffs miss the mark.

For example, the Sixth Circuit refused to apply the doctrines of *res judicata* and collateral estoppel in *United States v. LaFatch,* 565 F.2d 81, (6th Cir.1977), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978), based on both manifest injustice to a party and because it would violate an overriding public policy. The appeal in *LaFatch* involved conflicting claims of ownership of $50,000 admitted into evidence in a criminal proceeding. The defendant was indicted for having obtained the $50,000 from a subsidiary of MM Corporation, the appellant, by extortion in violation of federal law. When the Justice Department was informed of initial approaches made by LaFatch, MM was instructed to pay $50,000 to LaFatch under FBI surveillance. At the close of the government's proof, the district court dismissed the extortion charge and the jury returned a not guilty verdict on all remaining counts. Thereafter, LaFatch filed a motion in district court asking for the return of the $50,000 seized from him. On appeal, the Sixth Circuit refused to apply the principles of *res judicata* and collateral estoppel because to do so would permit LaFatch to keep $50,000 which he received as a payoff. Conversely, and equally important, the appellant would lose $50,000 which it paid to LaFatch in collaboration with the FBI. The court also pointed out that application of *res judicata* would violate overriding public policy because solicitation of bribes or payoffs in public matters is "manifestly contrary to the public interest." 565 F.2d at 84. Finally, the Sixth Circuit observed as follows:

> The acquittal of LaFatch in the criminal proceedings does not necessarily mean that he is the rightful owner of the money.

In the criminal proceedings the jury determined that the evidence was not sufficient to establish the guilt of LaFatch beyond a reasonable doubt. The right to ownership of the money, on the other hand, need be established only by the preponderance of the evidence.

*Id.* at 84–85. Here, the concerns of the Sixth Circuit in *LaFatch* are not present. There is no perversion of public policy which will occur if collateral estoppel is applied, nor will the court be confronted with different standards of proof because the previous case was a criminal case. To the contrary, the facts of the instant case present the court with the precise situation to which the principle of collateral estoppel is intended to apply—to prevent the court from having to adjudicate the precise issue already adjudicated by another court in this district on a similar action.

Similarly, plaintiffs rely on *Cooper v. Phillip Morris, Inc.,* 464 F.2d 9 (6th Cir.1972), in support of their position that collateral estoppel should not be applied to the case at hand. However, in *Cooper,* the court was confronted with whether or not the doctrines of *res judicata* and collateral estoppel should bar a federal court Title VII complaint when there had been prior state agency action, *i.e.,* action by the Kentucky Commission on Human Rights. In holding that those doctrines did not apply, the court quoted with approval the following language from the Second Circuit:

> The Congressional policy here sought to be enforced is one of eliminating employment discrimination, and the statutory enforcement scheme contemplates a resort to the federal remedy if the state machinery has proved inadequate. The federal remedy is independent and cumulative ... and it facilitates comprehensive relief.

464 F.2d at 10 (quoting *Voutsis v. Union Carbide Corporation,* 452 F.2d 889, 893 (2d Cir.1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972)). In addition to concerns with thwarting the congressional policy, the Sixth Circuit observed that the doctrines of collateral estoppel and *res judicata* should not be applied because there was no relief available concerning attorneys' fees before the state agency, although federal law provided for such under appropriate circumstances, and "Kentucky evidence rules pertaining to back wages differ substantially from the rules applicable in the federal courts." *Id.* at 12.

Again, the public policy concerns enunciated by the Sixth Circuit in both the *LaFatch* and *Cooper* cases are not present in this case. This court is not presently confronted with the application of collateral estoppel from a criminal case to a civil case or from a state agency to a federal court. Rather, the defendant is requesting that this court apply the doctrine of collateral estoppel to bar the relitigation of the precise issue adjudicated by Judge Hull in a virtually identical action pending before him. In the court's opinion, there could be no more appropriate case for the application of this doctrine and apply it the court will.

## V.

For the reasons foregoing, defendant's motion to dismiss will be granted, and this case will be dismissed for lack of subject matter jurisdiction because plaintiffs failed to file their administrative claim with the DOE within two years of the accrual of that claim as required by 28 U.S.C. § 2401(b).

Order accordingly.

## ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that defendant's motion to dismiss [Doc. 2] be, and the same hereby is, GRANTED to the extent that summary judgment is ENTERED in its favor and this case is DISMISSED for lack of subject matter jurisdiction. *See* Rule 12(b)(1), Federal Rules of Civil Procedure.